# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**DEBRA RUTLEDGE, ERIC RUTLEDGE and JEANNE MOORE,**

      **Plaintiffs,**

**v.**                                          **Case No. 6:09-cv-1245-Orl-35GJK**

**ACTION PRODUCTS INTERNATIONAL, INC., ACTION TOYS, INC, ACTION HEALTHCARE PRODUCTS, INC., CURIOSITY KITS, INC., WARREN KAPLAN and JUDITH KAPLAN,**

      **Defendants.**

_____/

## ORDER

**THIS CAUSE** comes before the Court for consideration of Plaintiffs' Renewed and Revised Motion for Entry of Final Default Judgment against Corporate Defendants. (Dkt. 154)  Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court hereby **GRANTS** Plaintiffs' motion (Dkt. 154), as described herein.

## I.    BACKGROUND

On July 17, 2009, Plaintiffs filed their Verified Complaint in this case, alleging violations of the Fair Labor Standards Act ("FLSA") (Count I), breach of contract (Count II), retaliation under the FLSA and the Florida Whistleblower Act ("FWA") (Count III), and damages for violations of COBRA and the American Recovery and Reinvestment Act ("ARRA") (Count IV).  (Dkt. 1 at 12-17) Defendants filed their Answer, Affirmative Defenses, and Counterclaim on August 7, 2009, which included a counterclaim by

Defendants/Counter-Plaintiffs Action Products International, Inc. ("APII"), Judith Kaplan, and Warren Kaplan against Plaintiff/Counter-Defendant Debra Rutledge for indemnification. (Dkt. 4 at 7-9) On October 7, 2010, the Clerk entered Default Judgment against Defendants Action Products International, Inc., Action Toys, Inc., Action Healthcare Products, Inc., and Curiosity Kits, Inc., after these corporate Defendants failed to retain counsel. (See Dkt. 52; Dkt. 57)

Plaintiffs and individual Defendants Warren and Judith Kaplan proceeded to a jury trial and settled their claims after the first day. (See Dkt. 128; Dkt. 128; Dkt. 129) On March 10, 2011, the Court held a hearing and granted the parties' Oral Stipulated Motion to Approve Settlement Agreement and Dismiss Action with Prejudice as to the individual Defendants. (Dkt. 128) At the hearing, Plaintiffs counsel advised that she was "undergoing some settlement negotiations with the corporate defendant, who has finally engaged counsel in Florida[.]" (Tr. Day 2 at 32) Accordingly, the Court issued an Order directing the Plaintiffs to file a status report regarding negotiations within twenty-one days. (Dkt. 133) In a March 31, 2011 status report, Plaintiffs requested an additional two weeks to continue settlement negotiations with corporate Defendant APII, advising that "[t]he other corporate Defendants refuse to discuss settlement." (Dkt. 134 at 1) No other status report has been filed and it appears that Plaintiffs have been unable to resolve their claims against corporate Defendants APII, Action Toys, Inc., Action Healthcare Products, Inc., and Curiosity Kits, Inc.

At Plaintiffs' request, the Court dismissed Plaintiff Eric Rutledge and Plaintiff Jeanne Moore's retaliation claims and Plaintiff Debra Rutledge's FLSA minimum wage

claim against the corporate Defendants on July 6, 2011.  (Dkt. 147)  On August 4, 2011,

the Court dismissed Plaintiff Debra Rutledge's retaliation claims against the corporate

Defendants.  (Dkt. 155)  Plaintiffs filed the instant motion on August 2, 2011, requesting

final default judgment be entered against (1) Plaintiff Eric Rutledge and Plaintiff Jeanne

Moore's unpaid wages/breach of contract claims (Count II); (2) Plaintiff Debra

Rutledge's unpaid wages/breach of contract claim (Count II); and (3) Plaintiff Debra

Rutledge's COBRA violation claim (Count IV).  (Dkt. 154 at 3)

## II.    FACTS

Based on the Verified Complaint (Dkt. 1) and Plaintiff's Motion (Dkt. 154), the

Court finds as follows:

1.     This Court has jurisdiction over Plaintiffs, Debra Rutledge, Eric Rutledge,

and Jeanne Moore, and Defendants, Action Products International, Inc., Action Toys,

Inc., Action Healthcare Products, Inc., and Curiosity Kits, Inc., and has subject matter

jurisdiction over this action.

2.     At all times material hereto, the principal executive office and

headquarters of each corporate Defendant was located at 1101 N. Keller Road, Suite E,

Orlando, Florida 32810.

3.     Defendant APII was the holding company for the other three corporate

Defendants—Action Toys, Inc., Action Healthcare Products, Inc., and Curiosity Kits,

Inc.—and owned, operated, and controlled these entities at all times material hereto.

4.     Defendant APII was incorporated in Florida in 1980 and became a publicly

traded company on the NASDAQ stock market in 1984.

5.     Defendant APII is engaged in the business of toy marketing, manufacturing, and sales.

6.     Plaintiff Debra Rutledge was employed by Defendant APII from September 2000 until March 2009.  During her tenure, Plaintiff Debra Rutledge served as the corporation's controller and manager of credit, collections and office operations.

7.     Plaintiff Eric Rutledge, Debra Rutledge's son, was employed by Defendant APII for approximately three years, from March 2006 until March 2009.

8.     Plaintiff Jeanne Moore was employed by Defendant APII for approximately five years, from March 2005 until March 2009.

9.     Plaintiffs' wages were deferred for the payroll periods ending: (1) 02/22/09; (2) 03/08/09; (3) 03/22/09; and (4) 03/24/09.   During the pay periods ending 02/22/09 and 03/08/09, Plaintiffs were paid two-thirds of their normal earning, i.e., one-third of their wages were deferred.   During the pay periods ending 03/22/09 and 03/24/09, Plaintiffs were paid $10.00 per hour, with the remainder of their wages deferred.

10.     Plaintiffs never consented or agreed to a reduction and/or deferral of their wages.

11.     Plaintiff Debra Rutledge terminated the employment of Plaintiffs Eric Rutledge and Jeanne Moore on March 20, 2009.  Plaintiff Debra Rutledge ceased working for Defendant APII a few days later.

12.     Plaintiffs were not paid any deferred wages after their termination from employment.

13.     Plaintiff Debra Rutledge was a participant in the corporate Defendants' medical benefit plan on the date of her resignation.

14.     The corporate Defendants failed to provide Plaintiff Debra Rutledge with any information or notice regarding health insurance continuation or any other rights she had under COBRA and the ARRA.

15.     After her termination, Plaintiff Debra Rutledge incurred $8,507.57 in medical expenses.

## III.     LEGAL STANDARD AND ANALYSIS

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk shall enter the party's default."  FED. R. CIV. P. 55(a).  However, a defendant's default alone does not require the court to enter a default judgment.  DIRECTV, Inc. v. Trawick, 359 F. Supp. 2d 1204, 1206 (M.D. Ala. 2005).  To enter a judgment, there must be sufficient basis in the pleadings to support the relief sought.  Id.  "The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.  In short . . .  a default is not treated as an absolute confession of the defendant of his liability and of the plaintiff's right to recover."  Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).  If the facts in the complaint are sufficient to establish liability, then the court must conduct an inquiry to ascertain the amount of damages.  See Adolph Coors Co. v. Movement Against Racism & the Klan, 777 F.2d 1538, 1543-44 (11th Cir. 1985).

5

Damages may be awarded only if the record adequately reflects the basis for the award via a hearing or a demonstration of detailed affidavits establishing the necessary facts.  See id. at 1544.  While a defaulted defendant admits well-pleaded allegations of liability, allegations regarding the amount of damages are not admitted by virtue of default.  Miller v. Paradise of Port Richey, Inc., 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999).  The Court determines the amount and character of damages and may hold a hearing to determine the same.  Id.  "Default judgments entered under Florida law only admit to a plaintiff's entitlement to liquidated damages, those damages that can be determined with exactness from the cause of action as pleaded, such as a pleaded agreement between the parties, pleadings susceptible to an arithmetical calculation, or by application of definite rules of law."  Loos v. Club Paris, LLC, 684 F.Supp.2d 1328, 1336 (M.D .Fla. 2010).

## A.  Count II- Breach of Express Employment Contract

For a breach of contract claim, Florida law requires a plaintiff to plead and establish: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach."  Vega v. T-Mobile, USA, Inc., 564 F. 3d 1256, 1272 (11th Cir. 2009). All three Plaintiffs contend that the corporate Defendants breached an "express oral contract that they would perform their job each day in exchange for payment of the agreed upon salary rate of pay for their labor." (Dkt. 74 at 7-8; see also Dkt. 1 at 13-14)   In her sworn declaration, Plaintiff Debra Rutledge stated:

> It was the practice, policy and custom of defendants to pay all amounts due and owing to an employee in their last regular paycheck, including unpaid accrued Paid Time Off (PTO), unless that employee was terminated for cause.

6

(Dkt. 154-1 at ¶ 4)  Further, Plaintiffs allege that "Defendants breached that agreement by failing to pay Plaintiffs the deferred amounts."  (Dkt. 1 at ¶ 78)  As a result, Plaintiffs claim they have suffered financial damages in the form of unpaid wages and unpaid accrued time off.  (Dkt. 1 at 13; Dkt. 154 at 6-8)

Plaintiffs' allegations are sufficient to meet the elements of a claim for breach of contract under Florida law.  Accordingly, Plaintiffs' motion for default judgment on Count II is **GRANTED**.

### *Damages*

The purpose of damages is to restore an injured party to the same position that he would have been in had the other party not breached the contract.  <u>Capitol Envtl. Servs., Inc. v. Earth Tech, Inc.</u>, 25 So.3d 593, 596 (Fla. 1st DCA 2009).  Plaintiffs submit that their economic, liquidated damages resulting from the corporate Defendants' breach of the employment agreements are as follows:

Plaintiff DEBRA RUTLEDGE is due a total of $4,143.36 in unpaid wages:
    a. Deferred wages for Payroll period ending 02/22/09: $ 730.92
    b. Deferred wages for Payroll period ending 03/08/09: $ 732.23
    c. Deferred wages for Payroll period ending 03/22/09: $1,392.31
    d. Unpaid wages for week of 03/24/09: $1,096.16
    e. Unpaid accrued Paid Time Off: $ 630.20
less $438.461/ she was later paid ( 438.46)

Plaintiff ERIC RUTLEDGE is due $1,968.00 in unpaid wages:
    a. Deferred wages for Payroll period ending 02/22/09: $400.00
    b. Deferred wages for Payroll period ending 03/08/09: $400.00
    c. Deferred wages for Payroll period ending 03/22/09: $400.00
    d. Unpaid accrued Paid Time Off: $768.00

Plaintiff JEANNE MOORE is due $1,256.59 in unpaid wages:
   a. Deferred wages for Payroll period ending 02/22/09: $344.94
   b. Deferred wages for Payroll period ending 03/08/09: $344.94
   c. Deferred wages for Payroll period ending 03/22/09: $234.40
   d. Unpaid accrued Paid Time Off: $332.31

(Dkt. 154 at 6-7; Dkt. 1 at ¶¶ 37, 59, 66)   Because these amounts are liquidated and ascertainable by simple mathematical calculations, Plaintiffs contend no trial for the purpose of assessing damages is necessary.  (Dkt. 154 at 8)  The Court agrees.  The Verified Complaint and Plaintiff Debra Rutledge's sworn declaration are sufficient for the court to ascertain the appropriate measure of damages.   Accordingly, Plaintiffs are entitled to recover the following amounts: (1) Plaintiff Debra Rutledge- $4,143.36; (2) Plaintiff Eric Rutledge-  $1,968.00; and (3) Plaintiff Jeanne Moore- $1,256.59.

## B.  Count IV- COBRA Violation

COBRA rights include the option to continue health insurance coverage equivalent to other qualified beneficiaries for at least eighteen months if a qualifying event occurs. 29 U.S.C. §§ 1162, 1165. Discharge from employment is a qualifying event.   29 U.S.C. § 1163(2).  After a qualifying event, the employer must notify the plan administrator, who is required to provide notice to employees of their COBRA rights and provide at least 60 days for the employee to elect COBRA continuation coverage. 29 U.S.C. §§ 1165, 1166(a)(2),(4).  The statute does not prescribe the contents of required notice. See 29 U.S.C. § 1166(a)(4).   However, the notice given must be sufficient to allow the qualified beneficiary to make an informed decision on whether to elect coverage. Meadows v. Cagle's, Inc., 954 F.2d 686 (11th Cir. 1992).

If a plan administrator arranges with another person to notify qualified beneficiaries of their continuation coverage rights, the notification requirement nonetheless remains with the administrator. Accordingly, the administrator must make all agreements and arrangements with the other person that are necessary to ensure qualified beneficiaries are properly notified. See Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1230-31 (11th Cir. 2002) (holding a company violated COBRA by not notifying a former employee of his right to receive continuation coverage even though the company had contracted with a third party to send out COBRA notices). The duty of notification ultimately lies with the employer, even if a plan administrator or a third party company is designated to disseminate COBRA notices. See id. Similarly, the American Recovery and Reinvestment Act ("ARRA"), which provides a COBRA premium reduction for eligible employees who are involuntarily terminated from employment through the end of May 2010, requires that an employer notify eligible employees of the availability of a COBRA premium reduction. Pub. L. N. 111-5 § 3001(a).

In Count IV, Plaintiff Debra Rutledge claims that the corporate Defendants failed to provide her with information regarding health insurance continuation after her resignation/constructive discharge and have continued to deny her healthcare insurance benefits under ERISA/COBRA. (Dkt. 1 at 16-17) Additionally, in her sworn declaration, Plaintiff stated:

> I made numerous attempts to obtain my COBRA notice so I could continue my insurance coverage. I attempted to contact Warren Kaplan and Judith Kaplan regarding my COBRA notice and was told to instead contact M. Scott Beaton, an employee who was supposedly then handling

> such personnel issues. I emailed Mr. Beaton on several occasions; I received only one response, a cryptic one that replied that 'You will receive your paperwork within the guidelines you mentioned.' . . . However I have never received any COBRA notice and was unable to continue my health insurance. I also contacted the health insurance company which informed me that they were not the COBRA administrator and did not know who was supposed to provide me the COBRA notice except that they knew it was not the insurer's responsibility, nor could the insurer allow me to COBRA my insurance without the insurer receiving the appropriate forms as well.
>
> . . .
>
> Although I was responsible for some of the paperwork involved with the COBRA process for employees as part of the personnel function of my job, I was not the designated plan administrator and I did not send out COBRA notices to employees.   The company employed a third party service, like COBRAServ, which handled the notices.

(Dkt. 154-1 at ¶¶ 6, 8)   Plaintiff Debra Rutledge's allegations regarding the corporate Defendants' failure to provide COBRA/ARRA notices set for in the Verified Complaint and her sworn declaration are sufficient to establish non-compliance with the statutes. Accordingly, Plaintiff Debra Rutledge's motion for default judgment as to Count IV is **GRANTED**.

### *Damages*

ERISA's civil remedy enforcement scheme lies in 29 U.S.C. § 1132. That section permits plan participants or beneficiaries to pursue various claims under the statute, including actions to recover benefits due under a plan or for equitable relief following ERISA violations.  See 29 U.S.C. § 1132(a)(1)(B),(a)(3). Section 1132(a)(1)(A) allows a participant or beneficiary to bring an action for the relief provided in § 1132(c).  Section 1132(c), in pertinent part, empowers a court to impose a fixed penalty for ERISA

procedural violations.[1] This penalty, up to $110[2] per day, can be imposed on a plan administrator that fails to provide information, requested by a participant or beneficiary, that ERISA requires be provided, such as through the procedural and notification provisions here at issue.  Though § 1132(c) concludes by ambiguously granting a court the discretionary power to "order such other relief as it deems proper," nothing in that subsection, or § 1132 as a whole, suggests that ERISA would approve of an affirmative damage recovery based merely on a plan administrator's failure to adhere to proper notification and disclosure procedures.  See, e.g., Hines v. Mass. Mut. Life. Ins. Co., 43 F.3d 207, 211 (5th Cir.1995) (recognizing violations of ERISA's reporting and disclosure requirements "does not give rise to a substantive damage remedy."); Lewandowski v. Occidental Chem. Corp., 986 F.2d 1006, 1008 (6th Cir. 1993) (noting that § 1132(c)

---

[1] Specifically, § 1132(c) provides:

> Any administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 1166 of this title, section 1021(e)(1) of this title or section 1021(f), or section 1025(a) of this title with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.
> . . .
> Any employer maintaining a plan who fails to meet the notice requirement of section 1021(d) of this title with respect to any participant or beneficiary or who fails to meet the requirements of section 1021(e)(2) of this title with respect to any person or who fails to meet the requirements of section 1082(d)(12)(E) of this title with respect to any person may in the court's discretion be liable to such participant or beneficiary or to such person in the amount of up to $100 a day from the date of such failure, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1),(3).

[2]  For violations occurring after July 29, 2007, "the maximum amount of the civil monetary penalty" was "increased from $100 a day to $110 a day."  29 C.F.R. 2575.502c–1.

empowers the court to impose a fixed $110 per day penalty for ERISA procedural violations but does not empower the court to award a plaintiff additional damages). Therefore, Plaintiff Debra Rutledge's request for recovery of $8,507.57 in damages related to medical costs is **DENIED**.

In this Circuit, in determining the appropriate penalty, trial courts may consider whether a denial of information and proper notice prejudiced the plaintiff. <u>Scott</u>, 295 F.3d at 1231-32. Here, Plaintiff Debra Rutledge has shown that she was prejudiced because she incurred medical costs in the amount of $8,507.57, which she would not have incurred if proper notification had been given by the corporate Defendants. (<u>See</u> Dkt. 1 at 17; Dkt. 154 at 9; Dkt. 154-1 at ¶ 2)  Therefore, the Court concludes that an award of $110 per day for the full six-month coverage period (180 days) is appropriate. Accordingly, Plaintiff Debra Rutledge is entitled to recover the sum of $19,800.00 as a monetary civil penalty against the corporate Defendants.

### C. Attorney's Fees and Costs

Plaintiffs request "leave to submit their fees and costs after the judgment on the damages has been entered[.]"  (Dkt. 154 at 11)  Plaintiffs' request for a deferred fee award is **GRANTED**.

### III.  CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

(1)    Plaintiffs' Renewed and Revised Motion for Entry of Final Default Judgment against Corporate Defendants (Dkt. 154) is **GRANTED** and

judgment is entered in favor of Plaintiffs upon Counts II and IV of the Verified Complaint herein;

(2)     The **CLERK** is **DIRECTED** to **ENTER** Judgment in favor of Plaintiffs and against the corporate Defendants consistent with the following:

a. Plaintiff Debra Rutledge is awarded liquidated damages in the amount of $4,143.36 on Count II against corporate Defendants Action Products International, Inc., Action Toys, Inc., Action Healthcare Products, Inc., and Curiosity Kits, Inc. jointly and severally;

b. Plaintiff Eric Rutledge is awarded liquidated damages in the amount of $1,968.00 on Count II against corporate Defendants Action Products International, Inc., Action Toys, Inc., Action Healthcare Products, Inc., and Curiosity Kits, Inc. jointly and severally;

c. Plaintiff Jeanne Moore is awarded liquidated damages in the amount of $1,256.59 on Count II against corporate Defendants Action Products International, Inc., Action Toys, Inc., Action Healthcare Products, Inc., and Curiosity Kits, Inc. jointly and severally;

d. Plaintiff Debra Rutledge is awarded $19,800.00 as a civil penalty on Count IV against corporate Defendants Action Products International, Inc., Action Toys, Inc., Action Healthcare Products, Inc., and Curiosity Kits, Inc. jointly and severally;

13

(3)     Plaintiff's request for deferred determination as to a reasonable attorney's

fee is **GRANTED**; and,

(4)     The **CLERK** is further **DIRECTED** to **TERMINATE** any pending motions

and **CLOSE** this case.

**DONE** and **ORDERED** in Orlando, Florida, this 17th day of August 2011.


MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE


Copies Furnished to:
Counsel of Record and
Any Unrepresented Parties.

14